UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JOSLIN INGRAM, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Civil Action Number |
| ) | **2:14-cv-00004-AKK** |
| **WESLEY G. PASSMORE and** ) | |
| **PASSMORE TOWING &** ) | |
| **RECOVERY,** ) | |
| ) | |
| **Defendants.** | |

## MEMORANDUM OPINION

Joslin Ingram, Jodi Beckman, Jeff Smith, and Nathan Oliver bring this case against Wesley G. Passmore and Passmore Towing & Recovery (collectively "Passmore" or "Defendants"). Doc. 1. Plaintiffs claim that Passmore willfully violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, by failing to pay them overtime. Doc. 1.

Before the court is Plaintiffs' motion for partial summary judgment, in which Plaintiffs claim they are entitled to judgment as a matter of law on three things: (1) that the tow truck driver plaintiffs are employees instead of independent contractors; (2) that Plaintiffs are entitled to liquidated damages; and (3) that the office worker plaintiffs are due to prevail in light of Passmore's admission that it failed to pay them overtime. Doc. 43. Indeed, Defendants admit to failing to pay Ingram, Beckman, and one other employee overtime. Doc. 48 at 5. As to these

1

three Plaintiffs, Passmore opposes only their claim for liquidated damages. *See* doc. 48 at 8. As to the rest of the motion, Passmore contends that the tow truck drivers are independent contractors, and, alternatively, that Passmore is exempt from the FLSA overtime requirements because of the Motor Carrier Act Exemption, 29 U.S.C. § 213(b)(1), and that these Plaintiffs are not entitled to liquidated damages. Doc. 48 at 3–7. Based on the evidence and the law, Plaintiffs' motion, which is fully briefed and ripe for review, *see* docs. 44; 48; 51, is due to be granted fully as to the office worker plaintiffs and, as to the truck driver plaintiffs (Smith and Oliver and the group they seek to represent), granted solely as to the issue of whether they are employees rather than independent contractors.

## I.     STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to

the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II.   FACTUAL BACKGROUND

Wes Passmore operates Passmore Automotive and Passmore Towing & Recovery ("Passmore"), a multi-million dollar enterprise that leases around 31 trucks, as a sole proprietorship. Doc. 45-1 at 3. Passmore is engaged in the business of towing vehicles, hauling salvage, servicing breakdowns, and handling wrecks. *Id*. Plaintiffs consist of a subset of office employees and tow truck drivers. Ingram and Beckman, who worked for Passmore as office staff, seek to represent the office employees, and Smith and Oliver seek to represent the tow truck drivers. All Plaintiffs allege that they were employees of Passmore and that Passmore violated the FLSA by failing to pay them overtime for the hours in excess of 40 hours they worked during a workweek. Doc. 1 at 1.

## III.   ANALYSIS

### A. The office workers are entitled to liquidated damages

The court begins its analysis with the subset of office worker plaintiffs. In addition to Ingram and Beckman, this group also includes opt-in Seth Seagle. Ingram, Beckman, and Seagle claim that they are entitled to judgment on their claims. Doc. 44. In light of Passmore's concession that it failed to pay the office workers overtime, judgment is due in favor of Ingram, Beckman, and Seagle on their overtime wages claim.

Passmore challenges, however, these plaintiffs' demand for liquidated damages.[1] Doc. 48 at 8. Generally, an employer who violates the FLSA is liable for compensatory damages and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b); *see also Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945). However, the court may use its discretion to deny liquidated damages if an employer can establish that it acted in good faith and based on a reasonable belief that its conduct was in compliance with the FLSA. 29 U.S.C. § 260; *see also Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987) ("[L]iquidated damages are mandatory absent a showing of good faith."). Satisfaction of the good faith requirement requires the employer to prove "it had an honest intention to ascertain what the act requires and to act in accordance with it." *Dyback v. St. of Fla. Dept. of Corr.*, 942 F.2d 1562, 1566 (11th Cir. 1991). "Objective good faith means the employer had reasonable grounds for believing its conduct comported with the FLSA . . . Good faith requires some duty to investigate potential liability under [the] FLSA." *Friedman v. South Fla. Psychiatric Assocs.*,

---

[1] As a separate but related matter, Passmore appears to argue unclean hands by Beckman who prepared the payroll sheets and purportedly caused the lack of overtime pay. Doc. 48 at 8. An unclean hands defense requires a showing (1) that "the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress," and with respect to a federal statute, (2) "that preclusion of the suit would not substantially interfere with the statute's policy goals." *Lamonica v. Safe Hurricane Shutters, Inc.,* 711 F.3d 1299, 1308 (11th Cir. 2013). Passmore cannot make either showing because Wesley Passmore personally set up the rates of pay in QuickBooks and has failed to establish that Beckman had the ability or authority to unilaterally change the pay rates to compensate employees for the overtime hours they worked. Moreover, even if Beckman could have done so, Passmore has failed to show that preclusion of this suit would not interfere with the FLSA's policy goals of providing compensation to employees for overtime hours worked.

139 F. App'x 183, 185–86 (11th Cir. 2005) (internal citations omitted). In ascertaining an employer's good faith, ignorance of the law is insufficient to establish the employer's reasonableness. *See Dyback,* 942 F.2d at 1567 (citing *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982)). Likewise, an employer's contention that it delegated overtime decisions to payroll management does not automatically establish good faith because a supervisor's knowledge can be imputed to the employer:

> an employer's knowledge is measured in accordance with his duty . . . to inquire into the conditions prevailing in his business. An employer does not rid himself of that duty because the extent of the business may preclude his personal supervision, and compel reliance on subordinates. . . . In reviewing the extent of an employer's awareness, a court need only inquire whether the circumstances . . . were such that the employer either had knowledge [of overtime hours being worked] or else had the opportunity through reasonable diligence to acquire knowledge.

*Reich v. Dep't of Conserv. and Nat. Res., St. of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994) (internal quotations and citations omitted).

Based on the record before this court, liquidated damages are warranted for the office worker plaintiffs. As stated previously, although Wesley Passmore admits that he failed to pay the office employees overtime, docs. 45-1 at 8; 48 at 8, he asks the court to excuse his failure due to his purported lack of knowledge and his belief that the FLSA did not apply to him, doc. 45-1 at 5. This contention overlooks that no finding of actual knowledge is necessary to impose liquidated damages; rather, the court must determine only whether Wesley Passmore had the opportunity to

6

acquire knowledge through reasonable diligence. *See Reich*, 28 F.3d at 1082. In that regard, contrary to Wesley Passmore's contention that he did not know what hours his employees worked or the rate of their commission, doc. 45-1 at 19, the evidence establishes that he had the opportunity to acquire this knowledge through reasonable diligence. This fact is evidenced by the simple process he used to calculate the overtime Passmore owed Beckman and Ingram after the initiation of this litigation: "I went back through each individual paycheck and figured out the hours of overtime, put the hours down beside where the check is, and did the half time." Doc. 45-1 at 9. This testimony demonstrates that Wesley Passmore had access to the necessary information, and the "opportunity through reasonable diligence to acquire knowledge." *Reich*, 28 F.3d at 1082. As such, Wesley Passmore cannot skirt the law by pleading ignorance where, as here, he has sole custody and control over the employment records of his employees. Doc. 45-1 at 5.

Accordingly, in light of Passmore's failure to present a reason sufficient for the court to depart from the mandatory imposition of liquidated damages, Plaintiffs' motion for overtime wages owed and for liquidated damages for the office worker plaintiffs is due to be granted in its entirety. As such, Ingram is due to receive $1,079.65 in overtime wages and another $1,079.65 in liquidated damages for a total of $2,159.30. Beckman is due $756.51 in overtime wages and another $756.51 in liquidated damages for a total of $1,513.02. The court will set an

evidentiary hearing to address the issue of the amount of overtime wages owed to opt-in plaintiff Seagle.

### B. The tow truck drivers are employees for the purposes of the FLSA

The court turns next to the tow truck driver subset of plaintiffs, who contend that Passmore has misclassified them as subcontractors. *See* doc. 45. In reviewing the drivers' claim, the court notes as a threshold matter that although Passmore classifies the drivers as subcontractors, doc. 53 at 8, Passmore does not offer any evidence to refute Plaintiffs' assertion that the drivers are actually employees who are entitled to the protections of the FLSA, *see* 29 U.S.C. § 201; doc. 48. For the following reasons, the court finds that the tow truck drivers are Passmore employees rather than independent contractors.

The FLSA "contains its own definitions, comprehensive enough to require its application to many persons and working relationships, which prior to the Act, were not deemed to fall within an employer-employee category." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947). The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An "employer" refers to any person "acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* §203(d). An entity "employs" a person if it "suffer[s] or permit[s]" that individual to work. *Id.* § 203(g). In determining the nature of the employment relationship, the court looks at the "economic reality" of the

8

"circumstances of the whole activity," rather than at the employer's labels. *Hodgson v. Griffin & Brand of McAllen, Inc.,* 471 F.2d 135, 237 (5th Cir. 1973).[2] This means that the court looks to whether "the work done, in its essence follows the usual path of an employee." *Rutherford Food Corp.,* 331 U.S. at 729. Factors to consider include: "(1) the nature and degree of control . . . as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending on his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; (6) the extent to which the service rendered is an integral part of the alleged employer's business." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 (11th Cir. 2013). However, these factors are not rigidly applied, but are used as a guide that allows "the 'economic reality' rather than 'technical concepts' . . . to be the test of employment." *Goldberg v. Whitaker House Co-op, Inc.*, 366 U.S. 28, 33 (1961).

Applying these factors to the facts in this case results in a finding that the drivers are employees of Passmore.

*1. Control*

---

[2] All decisions of the Fifth Circuit issued prior to October 1, 1981 are binding precedent on courts within the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

There is sufficient evidence to establish that Passmore has control over the drivers. Specifically, Wesley Passmore hires the tow truck drivers primarily from advertisements he places on Craigslist. Docs. 45-1 at 34; 45-5 at 41; 45-4 at 7. Although Wesley Passmore claims that he hires drivers as "subcontract employees," he does not have a standard independent contractor or subcontractor agreement. Doc. 45-1 at 4. Instead, the company utilizes an employee checklist for "new hires" that includes drug screening at the new hire's expense and a safety class certificate component. Docs. 45-6; 45-1 at 10; 26. At Wesley Passmore's discretion, the company may require new hires to pay for their uniform through a payroll deduction. Doc. 45-7 at 8.

Once the drivers begin working, Passmore has complete control over them. Among other things, the dispatch operators tell the drivers what calls to service and the drivers are precluded from declining an assignment. Doc. 45-1 at 4. To take time off, drivers must provide either 48 hours' notice or a doctor's note. Doc. 45-6 at 8. Next, Passmore utilizes its policies, including a safety program, to control the manner in which the drivers do their jobs. Docs. 45-6; 29. Relatedly, Passmore has the right to discipline drivers for violating its policies. Docs. 45-1 at 17–18; 45-7 at 42; 45-8 at 18. In fact, the drivers report to a supervisor who has the authority to discipline them. Doc. 45-5 at 31. Moreover, Passmore retains the right to unilaterally modify the terms of employment. For example, Passmore notified employees that, effective August 16, 2012, it would discharge drivers who failed to

contact customers within 25 minutes of a service call and every 25 minutes thereafter. *See* doc. 45-6 at 17. A separate undated memo contains policies and procedures relating to how drivers must perform their jobs, including one that "All drivers MUST turn in paperwork before 7am." Doc. 45-23 at 39 (emphasis original). Finally, Passmore requires its drivers to wait in a specific area and be "on call" for potential tows: "During peak time you will remain in an area that dispatch assigns you and you will not drive back to the shop or out of that area without permission from the dispatch." Doc. 45-23 at 39. Three violations of the on-call policy is considered grounds for automatic termination. Doc. 45-1 at 32.

These facts establish that Passmore has total control of the drivers' conditions of employment and weighs in favor of employee status.

2. *Opportunity for Profit or Loss*

The court also considers the "alleged employee's opportunity for profit or loss depending on his managerial skill." *Scantland,* 721 F.3d at 1312. An independent contractor profits from her own managerial skills, *id.* at 1317, which include control over price and choice of work location, advertising, and services provided, *see Usery v. Pilgrim Equipment Co.*, 527 F.2d 1308, 1313 (5th Cir. 1976). The evidence here establishes that the drivers profited from Passmore's managerial skill rather than their own skills: (1) their weekly pay is on a commission system that is dependent upon the number of jobs Passmore assigns them, doc. 45-24 at

11; and (2) they are paid through a payroll system that includes routine deductions for clerical fees, uniform expenses, or for failing to comply with paperwork policies, docs. 45-24 at 11; 45-23 at 44 ("If paperwork is late you will first receive a verbal warning after this warning if your paperwork is late again you will only receive 15% of the run. I will take the other 10% and pay the person who is having to go back and redo there [sic] job due to you not doing yours."). These two facts are sufficient to establish that the drivers' opportunity for profit or loss is dependent on Passmore, rather than on their own managerial skills.

    *3. Investment in Equipment or Materials*

Courts review ownership of facilities and equipment because "workers are more likely to be economically dependent on the person who supplies the equipment or the facilities." *Layton v. DHL Exp. (USA), Inc.,* 686 F.3d 1172, 1176 (11th Cir. 2012). Passmore seems to concede this prong. Indeed, the drivers operate Passmore towing trucks, doc. 45-1 at 12, and are subject to Passmore's limits on the activities they can engage in while in company vehicles, doc. 45-7 at 45. Moreover, drivers are subject to agreements related to the use of company cell phones, doc. 45-21 at 18, on-site video surveillance policies, doc. 45-21 at 19, and directives to treat Wesley Passmore and Michelle Passmore with "the up most [sic] respect at all times. [Because] [t]hey are the reason that each of us [has] a job to

provide for our families," doc. 45-24 at 27. Accordingly, this factor weighs in favor of the tow truck drivers.

### 4. Special Skill

Driving a Passmore truck does not require special skill or prior experience. Doc. 45-1 at 29. Passmore estimates that 60 to 70 percent of its new drivers had no prior experience and learned on-the-job. Doc. 45-1 at 20. New drivers simply take a road test "to make sure that [they are] safe to drive the equipment." *Id.* at 11. Given that the tow truck drivers require no special skill, this factor also weighs in favor of the drivers. *See Scantland,* 721 F.3d at 1318.

### 5. Permanency and Duration

The court must also consider the "degree of permanency and duration of the working relationship." *Scantland*, 721 F.3d at 1312. Passmore's drivers work at-will. Doc. 45-1 at 20. To maintain their employment, Passmore's policies require the drivers to regularly show up for work. Docs. 45-1 at 20–21; 45-24 at 3. On the other hand, Passmore allows drivers to receive pay advances, doc. 45-5 at 38–39, and deducts the advances, as well as any vehicle damage, through regular deductions from the drivers' paychecks, doc. 45-1 at 22. This practice of allowing the drivers to incur debt and pay it off over time through deductions from their paychecks suggests that Passmore expected a degree of permanency in the working

relationship. However, based on the record, because of the at-will nature of their employment, the court finds that the permanency and duration factor does not favor either party.

*6. Integral Part of Alleged Employer's Business.*

This factor also favors employee status. First, the bulk of Passmore's 2014 revenue came from its Towing & Recovery arm. Doc. 45-1 at 3. Second, Passmore relies on its drivers to perform this core part of its business. Doc. 45-1 at 5. Third, Passmore is concerned with the quality of its product and the policies in place demonstrate that it exerts control over the relationship with the drivers in the way that a company controls its employees. *See, e.g.,* doc. 45-1 at 17 and 31–32. Therefore, based on the record, the drivers are clearly an integral part of Passmore's business.

When all the facts are viewed in the light most favorable to Passmore and all reasonable inferences are drawn in Passmore's favor, the six factors weigh in favor of finding that the drivers are Passmore employees for FLSA purposes. Relevant to this analysis, Passmore hired the drivers, set their commission, disciplined the drivers, paid their wages, and hired managers to supervise their work. Additionally, Passmore had the opportunity to unilaterally change the conditions of employment, which it did on multiple occasions. Accordingly, the Plaintiffs' motion, as it relates to the employment status of the tow truck drivers, is due to be granted. However,

the court will defer the motion for liquidated damages with respect to the drivers until after the court determines whether the truck driver plaintiffs have established a violation of the FLSA. A resolution of this issue will depend on whether the Motor Carrier Act Exemption, which exempts certain employees whose jobs involve transportation from the FLSA's overtime requirements, applies in this case. *See, e.g.,* 29 U.S.C. § 213(b)(1). To make this determination, the court will have to resolve, among other things, whether the trucks the drivers operate weigh more than 10,000 pounds. Because this issue is not before the court—and even if it were, a factual dispute would exist in light of Passmore claiming the trucks weigh more than 10,000 pounds and Plaintiffs contending they do not, *see* docs. 48; 51, the court will reserve this issue for a later determination. Accordingly, Plaintiffs' motion for liquidated damages with respect to the tow truck drivers is premature and is due to be denied.

IV.   CONCLUSION

For the foregoing reasons, except for the portion relating to liquidated damages for the tow truck drivers, Plaintiffs' Motion for Partial Summary Judgment is due to be granted.

**DONE** the 29th day of March, 2016.

*[signature]*
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE